Brian M. Heit, State Bar No. 302474
**HEIT LAW GROUP P.C.**
4100 WEST ALAMEDA AVENUE, THIRD FLOOR
BURBANK, CALIFORNIA 91505
TELEPHONE (855) 231-9868
E-MAIL brian@heitlawgroup.com

Attorneys for Plaintiff JOSEFF-HOLLYWOOD CORPORATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION | LOS ANGELES**

**---o0o---**

**JOSEFF-HOLLYWOOD CORPORATION**, a California Corporation.

Plaintiff,

vs.

**MICHELE BASTIN,** also known as **MICHELE JOSEFF** an individual**;**

Defendants.

Case No.:

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**

1. **TRADEMARK INFRINGEMENT & COUNTERFEITING UNDER 15 U.S.C. § 1114 (3)**
2. **TRADEMARK DILUTION**
3. **COMMON LAW TRADEMARK INFRINGEMENT**
4. **CONTRIBUTORY TRADEMARK**
5. **CYBERSQUATTING UNDER 15 U.S.C. § 1125 (d) (2)**
6. **UNFAIR COMPETITION 15 U.S.C. § 1125**
7. **CAL. BUS. & PROF. C. VIOLATIONS 17200**

///

///

# COMPLAINT

PLAINTIFF **JOSEFF-HOLLYWOOD CORPORATION ("JOSEFF")** sue DEFENDANTS **MICHELE BASTIN ("BASTIN")** also known as **MICHELE JOSEFF** for various torts, equitable relief and provisional remedy for losses suffered by Defendant(s) to Plaintiff, or other remedies alternatively pleaded, who have been summoned to answer by said Plaintiff by writ of summons issued by this Honorable Court and alleges upon information belief as follows:

## I. <u>INTRODUCTION & NATURE OF ACTION</u>

1) BASTIN commits various wrongs flying in the face of trademark protection with her self-published coffee table book entitled *"Joseff of Hollywood – Putting the Tinsel in Tinseltown"* for sale through a Shopify account on a website <joseffofhollywoodbook.com> concerning JOSEFF'S historical attributes to classic Hollywood films and the costume jewelry used during those classic years. By attempting to publish this book, BASTIN has tarnished and diluted the trademarks afforded to JOSEFF, amongst the other relief as requested herein and throughout the instant complaint.

2) More than that, the proposed coffee table book contains several inaccuracies that would cause the ascertained value of several pieces of costume jewelry to be auctioned pieces to be adversely influenced by its publication whilst or in the alternative, amongst the dilution of the conferred marks by misleading the public to believe that BASTIN'S book is authorized by JOSEFF using its marks.

3) Despite JOSEFF's best efforts to reach resolution, BASTIN refuses causing the instant action to ensue for the causes of action: Trademark Infringement and Counterfeiting; Trademark Dilution; Contributory Trademark Infringement; Common Law Trademark Infringement; Unfair Competition 15 U.S.C. § 1125; Cal. Bus. & Prof. C. § 17200 et Seq.; and Cyber-Squatting.

4) JOSEFF seeks damages, attorneys' fees, costs and preliminary and permanent injunctive relief, and anticipates filing for a temporary restraining order

HEIT LAW GROUP
PROFESSIONAL CORPORATION

that is filed concurrently with the instant complaint.

## II. JURISDICTION & VENUE

5) This action arises under the federal trademark statute (the "Lanham Act"), 15 U.S.C. § 1051 et seq., and under the common law of the State of California. This Court has subject matter jurisdiction over the federal trademark, false advertising, and unfair competition claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

6) The Court has subject matter jurisdiction over the related California state law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

7) This Court has personal jurisdiction Defendant based upon the following: (a) BASTIN does business in Los Angeles County California,; (b) Defendant owns and operates a website on the Internet at <wwww.joseffofhollywoodbook.com> that is accessible to the residents of the State of California and the world incorporating Plaintiff's conferred marks; (c) the website provides information and purchase abilities of the counterfeited merchandise bearing Plaintiff's marks that is accessible to resident of the State of California and the world; (d) Defendant committed tortious acts that she knew or should have knowns would cause injury to Plaintiff in the State of California.

8) The amount in controversy between the parties exceeds $75,000. Plaintiff is informed and believes, and on that basis alleges, that this Court has personal jurisdiction over Defendant(s) because they have extensive contacts with, and conduct business within, the State of California and this judicial district; Defendants have caused the principal trademark infringement to be advertised, promoted, and sold in this judicial district; the causes of action asserted in this Complaint arise out of Defendants' contacts with this judicial district; and because Defendants have caused tortious injury to Plaintiff in this judicial district.

9) Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) because Defendants have extensive contacts with, and conduct business within,

HEIT LAW GROUP
PROFESSIONAL CORPORATION

the State of California and this judicial district; Defendants have caused the infringing coffee table book to be published, advertised, promoted, and sold in this judicial district; the causes of action asserted in this Complaint arise out of Defendants' contacts with this judicial district; and because Defendants have caused tortious injury to Plaintiff in this judicial district.

## III. PARTIES

10) Plaintiff JOSEFF-HOLLYWOOD CORPORATION ("JOSEFF") is a California corporation qualified to do business in the State of California since 1939.

11) Defendant MICHELE BASTIN, also known as MICHELE JOSEFF ("BASTIN") who, upon information and belief, does business in Los Angeles County California. Defendant operates <wwww.joseffofhollywoodbook.com> as indicated with her photograph and purchase options evidencing remunerated activities. See Exhibit A.

## IV. ALLEGATIONS COMMON TO ALL COUNTS

### A. Underlying Facts Regarding Plaintiff's Marks & History

12) Joseff of Hollywood was a jewelry firm founded by Eugene Joseff.

13) The firm was particularly noted for creating costume jewelry for many of the biggest films and movie stars of the 1930s and 1940s, including Shirley Temple in *The Little Princess*, Vivien Leigh in *Gone with the Wind*, and Elizabeth Taylor in *Cleopatra.* The corporation is closely held and run by family.

14) Eugene Joseff's widow Joan Castle owned the company until her death in 2010. Today the family business focuses on precision investment casting of parts for machinery and aircraft with the other company founded by Eugene Joseff - "Precision Investment Castings"

15) With the notoriety of the costume jewelry amongst the underlying classic Hollywood cinema, the JOSEFF OF HOLLYWOOD marks is an internationally recognized and respected name in the entertainment industry for having supplied such classic movies throughout.

HEIT LAW GROUP PROFESSIONAL CORPORATION

16) JOSEFF owns the following marks, in connection with, amongst other things costume jewelry all of which in the International Nice Class 14:

a. United States Registration Serial No. 85625868, word mark in distinctive styling, see Exhibit B



b. United States Registration Serial No. 85833907, standard character mark JOSEFF-HOLLYWOOD. see Exhibit C

c. United States Registration Serial No. 86011430, standard character mark JOSEF OF HOLLYWOOD. see Exhibit D

17) None of the trademarks registered have pending, nor application cancelled, nor revoked *statī*.

18) The aforementioned marks are internationally recognized and respected in the entrainment industry. Plaintiff has spent millions of dollars to advertise and promotes the aforementioned marks in print, auction, broadcast media and on the Internet through Plaintiff's website accessible throughout the United States and around the world. In addition, Plaintiff has made extensive use of their registered marks on, amongst other things, signage, billboards and promotional materials.

19) Based on its federal trademark registrations and extensive use, JOSEFF owns the exclusive right to use its marks in connection with costume jewelry and promotion thereof throughout the historical context of classic Hollywood Studio events be it production of past blockbuster hits throughout multiple usage of a certain costume jewelry pieces throughout various known movies as worn by classic movie star names.

20) The uniqueness on its federal trademark s along with the extensive advertising and promotion thereof have resulted in JOSEFF OF HOLLYWOOD

being distinctive and famous given Plaintiff's contribution to historical blockbuster hits.

**B. Statement Re Actions of the Defendant & Family Dynamic**

21) BASTIN holds herself out falsely as the biological granddaughter of founder Eugene Joseff.

22) BASTIN holds herself out falsely as the biological granddaughter of founder Eugene Joseff. BASTIN is the biological daughter of Tina Joseff, CEO of Plaintiff from a previous marriage before marrying Jeffrey Joseff Sr., who is and was the sole issue of founder Eugene Joseff and Joan Castle Joseff. Tina Joseff is related by marriage, having married Jeffrey Joseff Sr. in 1983. The only remaining blood relatives of this lineage are Jeff Joseff Jr.

23) As a result of this blended family dynamic, BASITIN controls 27% of shares of Plaintiff corporation, but has no legal or administrative title, nor is BASTIN on any contemplated schedule of authorities with the ability to bind JOSEFF into any legally cognizable documents. BASTIN was a former employee of PLAINTIFF who was terminated for good cause concerning her performance or lack thereof.

24) On or about November 2017 BASTIN began selling the above referenced coffee table book on recounting the legacy of Plaintiff and her alleged grandfather. Using company resources and its photo catalog did BASTIN usurp copyrighted material for her coffee table book without the consent of JOSEFF'S corporate leadership, amongst the use of Plaintiff's conferred marks.

25) Upon information and belief according to <whois.domaintools.com> on 03/08/2017 Defendant registered <joseffofhollywoodbook.com> through Domain By Proxy, LLC. The website claims that the Defendant is authorized promoter of Plaintiff with Plaintiff's mark and logo are emblazoned throughout the website to promote Defendant's sales.

26) Contained in the self-published book submitted to the contemplated

HEIT LAW GROUP PROFESSIONAL CORPORATION

publisher were various photographs of costumes pieces as used and part of JOSEFF'S collection belonging to JOSEFF amongst using JOSEFF'S registered marks.

27) Upon information and belief, since at least as early as of the Spring of 2017 Defendant has knowingly and willfully published and sale a proposed coffee table book in a wrongful and unauthorized association with JOSEFF'S marks. Defendant is not authorized to use JOSEFF'S marks or represent the marks to the public on behalf of Plaintiff.

28) On or about November 07, 2017 counsel for Plaintiff sent the Defendant a cease and desist letter regarding the coffee table book endeavor and demanded that she immediately cease all activities thereof. See Exhibit E

29) Rather than complying with the demands in the cease and desist letter, and without any authorization or license from Plaintiff, Defendant knowingly and willfully continues to use Plaintiff's conferred marks in commerce in connection with the operation of her websites and online sales of the counterfeit infringing book.

30) Defendants unauthorized use of JOSEFF'S marks on or in connection with the advertising, marketing, offering for sale, and sale of Defendant's counterfeit coffee table book is likely to cause confusion or to cause mistake or to deceive.

31) Defendant is wrongfully using the Plaintiffs famous name and mark and world-renowned reputation for her own commercial and financial benefit.

32) By using JOSEFF's names and conferred marks on her coffee table BASTIN was attempting to trade on the goodwill of the Plaintiff and attempting to create an association between her personal activities and those once offered by the Plaintiff under the Plaintiff's famous marks.

33) Upon information and belief, the Defendant has no trademark or other intellectual property rights or licensee agreement in the conferred marks owned by

HEIT LAW GROUP
PROFESSIONAL CORPORATION

the Plaintiff.

34) Defendant is not an authorized to promote Plaintiff, nor was she given permission to take images, videos, or any information from Plaintiff's or its photographic archive and post on the Defendant's site <joseffofhollywoodbook.com>

35) If the public purchases this book from the Defendant believing she is an authorized promoter for JOSEFF, and believing that the book is authentic, they are likely to be armed after paying sums of money for a book which cannot be authorized by Plaintiff. In the event members of the public lose money because they purchased a counterfeit book from the Defendant the public may blame the Plaintiff and hold Plaintiff responsible.

36) More than that, most of the photos used have not been vetted for clearance form each respective movie studio's intellectual property enforcement division leaving JOSEFF open to irreparable harm in that every movie studio who holds the pertinent copyright will blame JOSEFF for the unauthorized use.

37) By using Plaintiff's marks on Defendant's website. Defendant was, and is attempting to create a business association between the book's publication and sale, Defendant was and is attempting to trade on the goodwill of Plaintiffs.

38) By using Plaintiff's marks on Defendant's website, Defendant was, and is attempting to create a business association between the book's publication and sale, Defendant was and is attempting to trade on Plaintiff's famous marks.

39) Plaintiff's marks at issue in this case were distinctive at the time Defendant was and is attempting to create an association amid Defendant's book and those activities of the Plaintiff.

40) Upon information and belief, the Defendant created her infringing websites using Plaintiff's conferred marks, supra, name, together with the bad faith intent to profit from Plaintiff's marks and reputation.

41) Upon information and belief, the Defendant's has not trademark or

HEIT LAW GROUP PROFESSIONAL CORPORATION

other intellectual property rights in Plaintiff's conferred marks. Defendant had no prior uses use of the Plaintiff's conferred marks in connection with the bona fide offering of any goods or services.

42) Upon information and belief, Defendant acted in a manner that could harm the goodwill represented by Plaintiff's marks by falsely claiming she works for Plaintiff's or that she is affiliated with Plaintiff so she might obtain money from counterfeit products so that she could commercially benefit from sales.

43) Plaintiff's names and marks used on Defendant's websites are distinctive and famous. Upon information and belief, the Defendant did not believe or have reasonable grounds to believe that the use of the Plaintiff's conferred marks, specifically to create a false appearance of affiliation with Plaintiff's, was a fair use or otherwise lawful.

**FIRST CLAIM FOR RELIEF**
**(Trademark Infringement and Counterfeiting Under Lanham Act)**

44) Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

45) As its first claim for relief, Plaintiff alleges counterfeiting and infringement of a federally registered trademark in violations of Section 32(1) of the Lanham Act, 15. U.S.C § 1114(1).

46) Defendant uses and/or is using in commerce to provide a counterfeited book and claim affiliation with the Plaintiff. Defendant's use is unauthorized and creates confusion in the marketplace.

47) Defendant's use in commerce of Plaintiff's identical marks and or a mark confusingly similar to Plaintiff's trademarks for Defendant's book and associated website as identified in the Allegations Common to All Counts, supra, constitutes reproduction, copying, counterfeiting, and colorable imitation of Plaintiff's trademarks in a manner that is likely to cause confusion or misstate or is likely to deceive consumers.

HEIT LAW GROUP
PROFESSIONAL CORPORATION

48) By using Plaintiff's marks and or marks confusingly similar to Plaintiff's trademarks with the knowledge that Plaintiff's own and have used and continue to use, their trademarks across the United States and World, Defendant has intended to cause confusion, cause mistake, or deceive consumers.

49) Upon information and belief, Defendant has knowingly and willfully advertised and offered counterfeit goods for sale using JOSEFF's marks, with the intention of misleading, deceiving, or confusing consumers as to the origin of the goods and trading on Plaintiff's reputation and good will.

50) Defendant's use of Plaintiff's marks and or marks confusingly similar to Plaintiff's trademarks has created a likelihood of confusion amongst consumer who may falsely believe that the Defendant's website is associated with Plaintiff or that Plaintiff sponsor or approve of Defendant's services or commercial activities.

51) Defendants unauthorized use of the JOSEFF marks in interstate commerce as described above constitutes trademark counterfeiting under 15 U.S.C § 1141(1).

52) Defendants unauthorized use of the JOSEFF marks in interstate commerce as described above constitutes trademark infringement under 15 U.S.C § 1141(1).

53) As a direct and proximate result of Defendant's infringement, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to their business, reputation and goodwill.

54) Defendant's acts of counterfeiting and infringement will cause further irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**(Trademark Dilution)**

55) Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

56) The actions of Defendants described above and specifically, without limitation, their unauthorized use of the JOSEFF'S marks trademark, and confusingly similar variations thereof, in commerce to advertise, market, and sell Defendant's coffee table book in the United States including California, are likely to cause dilution by blurring and tarnishment in violation of 15 U.S.C. § 1125(c).

57) The actions of Defendants, if not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the JOSEFF'S mark, and injury to Plaintiff's business.

58) Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and U.S.C. 1125(c).

59) On information and belief, the actions of Defendants described above were and continue to be deliberate and willful. Plaintiff is therefore entitled to recover damages in an amount to be determined at trial, profits made by Defendant's coffee table book and the costs of this action pursuant to 15 U.S.C. § 1117.

## THIRD CLAIM FOR RELIEF
## (Common Law Trademark Infringement)

60) Plaintiff incorporates the allegation in the preceding paragraphs as if fully set forth herein.

61) By virtue of having used and continuing to use their trademarks, Plaintiffs have acquired common law rights in those marks.

62) Defendant's use of marks identical and/or confusingly similar to Plaintiffs' trademarks infringes Plaintiffs' common law rights in their trademarks, and this use is likely to cause confusion, mistake, or deception among consumers, who will believe that Defendant's services, and web sites originate from, or are affiliated with, or endorsed by Plaintiffs when, in fact, they are not.

63) As a direct and proximate result of Defendant's infringement of

HEIT LAW GROUP
PROFESSIONAL CORPORATION

Plaintiffs' common law trademark rights under California and other common law, Plaintiffs have suffered, and will continue to suffer, monetary damages and irreparable injury to their business, reputation, and goodwill.

**FOURTH CLAIM FOR RELIEF**
**(Contributory Trademark Infringement)**

64) Plaintiff incorporates the allegation in the preceding paragraphs as if fully set forth herein.

65) The actions of Defendant described above and specifically, without limitation, their knowledge, participation, and inducement of the unauthorized use of JOSEFF'S mark and confusingly similar variations thereof, in commerce to advertise, market, and the underlying coffee table book in the United States and California, constitute contributory trademark infringement in violation of federal law and the common law of the State of California.

66) The actions of Defendants not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with JOSEFF'S marks, and injury to Plaintiff's business.

67) On information and belief, the actions of Defendant described above were and continue to be deliberate and willful.

**FIFTH CLAIM FOR RELIEF**
**(Cyber-Squatting Under Lanham Act 15 U.S.C. § 1125(d))**

68) Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

69) Defendant has registered, trafficked in, and/or used a domain name that is identical or confusingly similar to and/or dilutive of Plaintiffs' trademarks, which were distinctive and/or famous at the time of registration of the domain name.

70) Upon information and belief, Defendant has or had a bad-faith intent

to profit from Plaintiff's trademarks.

71) As a direct and proximate result of such conduct, Plaintiffs have suffered, and will continue to suffer, monetary loss and irreparable injury to their business, reputation, and goodwill.

**SIXTH CLAIM FOR RELIEF**
**(Unfair Competition Under Lanham Act 15 U.S.C § 1125(a))**

72) Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

73) Defendant's use in commerce of marks identical and/or confusingly similar to Plaintiff's trademarks in connection with Defendant's services, and web sites, constitutes a false designation of origin and/or a false or misleading description or representation of fact, which is likely to cause confusion, cause mistake, or deceive as to affiliation, connection, or association with Plaintiffs, or as to the origin, sponsorship, or approval of Defendant's services or commercial activities.

74) Defendant's use in commerce of Plaintiff's name and/or marks are confusingly similar to Plaintiff's trademarks with the knowledge that Plaintiffs own and have used, and continue to use, their trademarks constitutes intentional conduct by Defendant to make false designations of origin and false descriptions about Defendant's services and commercial activities.

75) As a direct and proximate result of such unfair competition, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to their business, reputation, and goodwill.

**SEVENTH CLAIM FOR RELIEF**
**(Cal. Bus. & Prof. C. 17200 et seq. Violation)**

76) Defendant's acts and practices as described herein constitute unlawful, fraudulent, unfair business practices, and unfair competition in that:

HEIT LAW GROUP
PROFESSIONAL CORPORATION

a. the justification for Defendants conduct is outweighed by the gravity of the consequences to Plaintiff;

b. the conduct is immoral unethical, oppressive, unscrupulous, unconscionable, or substantially injurious to Plaintiff, and;

77) the uniform conduct of Defendant has the tendency to deceive Plaintiff and public at large.

78) Defendants unlawful, unfair and fraudulent business acts, practices, and unfair competition include, but are not limited to:

a. Counterfeit goods in the name of Plaintiff with its registered trademark

b. making representations involve rights, remedies, or obligations which does not have or otherwise prohibited by law;

c. attempting to ride off the goodwill and notoriety of the Plaintiff.

79) In addition to the above, the conduct alleged throughout the complaint constitutes infringement that not only results in liability as individual causes of action, but provide for finding of liability under California Business and Professions Code 17200 et seq.

80) Plaintiff has been injured in fact and lost money, property as a result of the incurring conduct of Defendant and its conduct violates common law unfair business practices and unfair competition throughout.

## V. PRAYER FOR RELIEF

81) WHEREFORE, Plaintiff respectfully prays that the Court grant the following relief:

a. Enter judgment that Defendant has violated 15 U.S.C. §§ 1114(1) and 1125(a).

b. A preliminary and permanent injunction prohibiting Defendant, her respective officers, agents, servants, employees and/or all persons acting in concert or participation with them, or any of them, from: (1) using Plaintiff's trademarks or confusingly similar variations thereof, alone or in combination with any other

HEIT LAW GROUP
PROFESSIONAL CORPORATION

letters, words, letter strings, phrases or designs, in commerce or in connection with any business or for any other purpose (including, but not limited to, on websites and in domain names); and (2) using Plaintiff's trademarks or confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs in order to create a false affiliation with Plaintiff;

c. A preliminary and permanent injunction requiring the Defendant to remove any and all content from the website <joseffofhollywoodbook.com> and any similar website she owns and/or operates, which was obtained from the Plaintiff's website or other source owned and operated by Plaintiff, and which contains any name, mark, image, video, language, owned by the Plaintiff or which references the Plaintiff;

d. A preliminary and permanent injunction requiring the Defendant to remove all content from her Facebook page and any similar website or account he owns and/or operates including but not limited to Twitter, which was obtained from the Plaintiff's website or other source owned and operated by Plaintiff, and which contains any name, mark, image, video, language, owned by the Plaintiff or which references the Plaintiff.

e. Award to Plaintiff the Defendant's profits and the damages sustained by Plaintiff because of Defendant's conduct in infringing the Plaintiff' marks, or, in the alternative, statutory damages per trademark infringed by willful counterfeiting in amount of Two Million Dollars (USD $2,000,000.00) per trademark infringed;

f. An award of compensatory, consequential, statutory, and punitive damages to Plaintiff in an amount to be determined at trial;

g. An award of interest, costs and attorneys' fees incurred by Plaintiff in prosecuting this action; and

h. All other relief to which Plaintiff are entitled.

///

///

HEIT LAW GROUP PROFESSIONAL CORPORATION

///

///

Respectfully Submitted,

**HEIT LAW GROUP, P.C.**

/s/ Brian M. Heit
Brian M. Heit, Esq.

Dated: 14 December 2017

Attorneys for Plaintiff
**JOSEFF-HOLLYWOOD CORPORATION**

**JURY TRIAL DEMAND**

Plaintiff hereby demands trial by Jury.

Respectfully Submitted,

**HEIT LAW GROUP, P.C.**

/s/ Brian M. Heit
Brian M. Heit, Esq.

Dated: 14 December 2017

Attorneys for Plaintiff
**JOSEFF-HOLLYWOOD CORPORATION**

HEIT LAW GROUP
PROFESSIONAL CORPORATION